IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LOCO BRANDS, LLC d/b/a DIRECT TEK | § | |
| | § | |
| | § | |
| v. | § | CASE NO. 6:18-CV-69-JDK-KNM |
| | § | |
| BUTLER AMERICA, LLC, and | § | |
| FRONTIER COMMUNICATIONS | § | |
| CORPORATION | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Frontier Communications Corporation's ("Frontier") Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Doc. No 67) and Defendant Butler America, LLC's ("Butler") Motion to Dismiss Under Rule 12(b)(6) (Doc. No. 69). The Court **RECOMMENDS GRANTING-IN-PART AND DENYING-IN-PART** Frontier's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Doc. No. 67) and **GRANTING-IN-PART AND DENYING-IN-PART** Defendant Butler's Motion to Dismiss Under Rule 12(b)(6).

## BACKGROUND

Plaintiff Loco Brands, LLC d/b/a Direct TEK ("Direct TEK") and Defendants are engaged in operations related to the telecommunications industry. Doc. No. 55 at ¶ 6. Direct TEK contracts with telecommunications technicians and places its technicians across the country through contracts and business relationships with Defendants. *Id.*

Plaintiff alleges that Butler provided Direct TEK's confidential, proprietary information to a competitor of Direct TEK. *Id.* at ¶ 7(a). The alleged confidential and proprietary information consisted of a spreadsheet that contained the names, addresses, social security numbers, and other

1

private information of Direct TEK's technicians (the "Confidential Information"). *Id.* The Confidential Information allows Direct TEK to "quickly mobilize technicians needed virtually anywhere in the country." *Id.* Direct TEK alleges that it kept the Confidential Information private, only shared it with Butler, and only shared it with Butler on a confidential basis. *Id.* Plaintiff further alleges that Butler knew the Confidential Information was confidential and knew the information should not be shared with anyone. *Id.* Plaintiff also alleges that its competitors would not have had access to the Confidential Information through proper means. *Id.* at ¶ 7(a). Direct TEK finally alleges that a Butler manager, Susan Nab, shared the Confidential Information with a Direct TEK competitor thereby damaging Direct TEK. *Id.*

In October of 2017, Plaintiff alleges that Butler contacted Direct TEK personnel by email to encourage them to end their relationship with Direct TEK and take positions with Direct TEK's competitors. *Id.* at ¶ 7(b). Direct TEK contends the improper contact caused Direct TEK to lose at least fifty-eight technicians. *Id.*

In addition to the improper contact with Direct TEK personnel, Plaintiff alleges Butler made false statements to Frontier and various technicians that Direct TEK "could not be paid for its services by Butler . . . because Direct TEK would keep, steal, and/or 'run away with' the money." *Id.* at ¶ 7(c). Direct TEK further alleges that Butler also advised technicians that Butler had already paid Direct TEK to suggest that Direct TEK kept or stole the money rather than paying its technicians. *Id.* Plaintiff alleges Butler knew Direct TEK had not been paid when it made this statement. *Id.* Plaintiff also alleges that Butler, in a concerted effort to damage Direct TEK's reputation, intentionally withheld and delayed payments to Direct TEK and lied to Direct TEK and technicians about the timing of those payments. *Id.* at ¶ 7(d).

Further, Direct TEK alleges that Butler and Frontier conspired to destroy Direct TEK's business because of Direct TEK's refusal to participate in "Defendants' illegal practice of engaging in racial prejudice." *Id.* at ¶ 7(e). Plaintiff points to two alleged instances of racial prejudice. *Id.* First, Plaintiff alleges that Butler, at the insistence of Frontier, fired "numerous African-American technicians placed in Southeast Texas by Direct TEK for purposes of aiding in relief efforts following Hurricane Harvey." *Id.* Second, Plaintiff alleges that it placed African-American technicians with Butler on a project for Frontier in Wisconsin. *Id.* Plaintiff alleges that after Frontier fired an African-American technician on the project in Wisconsin, a Butler manager, Susan Nab, "insisted (likely because of pressure from Frontier) that replacement technicians be more 'professional', which she defined . . . [as] 'Caucasian' . . . ." *Id.*[1] Plaintiff also alleges that Susan Nab had, on occasion, inquired as to whether technicians were "black," and then advised that if a technician was "black, that it may 'be a problem.'" *Id.* Plaintiff also notes that Direct TEK's owner is a racial minority. *Id.*

## **LEGAL STANDARD**

### **Motion to Dismiss Pursuant to 12(b)(6)**

The Court utilizes a "two-pronged approach" in considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the

---

[1] Plaintiff points to Exhibit A, an email from Butler's Susan Nab to Carlos Medina and Eurie Acosta, that states: "We need a very professional replacement, with all the proper tools and safety equipment…sorry to say, preferably 'Caucasian'." *See* Doc. No. 70-1. This attachment was initially attached to Plaintiff's Amended Complaint (Doc. No. 12), but was inadvertently not attached to Plaintiff's Second Amended Complaint. Accordingly, Plaintiff supplemented its Second Amended Complaint with the email exhibits on November 27, 2018. *See* Doc. No. 70.

Court views the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).   Stated differently, the Court must consider whether a plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments."   *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)).

## ANALYSIS

**I.     Defendant Frontier's Motion to Dismiss Second Amended Complaint for Failure to State a Claim:**

Frontier alleges that Plaintiff's Second Amended Complaint ("SAC") fails to state a claim upon which relief can be granted. Doc. No. 67 at 2-3. Frontier seeks to dismiss Plaintiff's claims of: (1) tortious interference with contract; (2) tortious interference with existing business relationships; (3) business disparagement; (4) discrimination and retaliation under 42 U.S.C. § 1981; and (5) civil conspiracy.

*1.   Tortious Interference with a Contract*

As an initial matter, Plaintiff's SAC alleges causes of action for tortious interference with existing business relationships as well as tortious interference with contracts. *See* Doc. No. 55. Frontier argues that Plaintiff's tortious interference with contract and tortious interference with existing business relationship claim "appear to state the same claim for tortious interference." Doc. No. 67 at 2 n. 1. The Court agrees. Plaintiff's claim for tortious interference with existing business relationships is premised on its existing contractual relationships with its technicians, and, thus, it

4

is appropriately analyzed as a tortious interference with contract claim. See Doc. No. 55 at ¶ 11 ("By its willful and intentional conduct as outlined in more detail above regarding interference with the existing technicians employed by and contracted to Direct TEK . . . ."). Accordingly, the Court recommends dismissing Plaintiff's tortious interference with existing business relationships claim as duplicative of its tortious interference with contract claim.[2]

To establish a tortious interference with a contract claim, a plaintiff must plead: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)). In Texas, "a person must be a stranger to a contract to tortiously interfere with it." *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006)  (quoting *Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997)). "Intentional interference does not require intent to injure, only that 'the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Cmty. Health Sys. Prof'l Servs. Corp.*, 525 S.W.3d at 689 (quoting *Sw. Bell tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)).

Frontier first argues that it could not legally interfere with Plaintiff and Butler's business contract because Frontier is not a "stranger to the contract." Doc. No. 67 at 4-5. Frontier concludes that it had a "connection to the business relationship and/or contracts that existed between Plaintiff and Butler[,]" and it "cannot be liable for tortiously interfering with those business relationships

---

[2] Because this applies with equal force to Plaintiff's allegations against Butler, the Court also recommends dismissing Plaintiff's claim for tortious interference with existing business relationships against Butler as duplicative of its tortious interference with contract claim.

and/or contracts as a matter of law." *Id.* at 5. Essentially, Frontier argues that its interests are so closely aligned with Butler's interests that "it becomes impossible to recognize their separate identity for purposes of analyzing the interference claim." Doc. No. 75 at 3-4 (citing *Schoellkopf v. Pledger*, 778 S.W.2d 897, 903 (Tex. App.—Dallas 1989, writ denied)).

Plaintiff responds that Frontier may be liable for tortious interference because Frontier is not a party to the contract between Plaintiff and Butler, Frontier was not the corporate agent of Butler, and Frontier was not a party to the contract between Direct TEK and its technicians. Doc. No. 73 at 5.

Frontier's argument fails at the pleadings stage. The SAC alleges that Direct TEK contracts with telecommunication technicians and places those technicians with Butler on projects for Frontier. This allegation is sufficient to state a plausible claim that Frontier is a stranger to Plaintiff's contracts with Butler and its technicians.

Frontier also argues the SAC alleges no facts "from which this Court could draw an inference as to Frontier's intention to interfere with any Direct TEK contract." Doc. No. 75 at 4. Frontier argues that Plaintiff's claim fails because Plaintiff failed to plead facts that show Frontier intentionally took action to cause the termination of specific employment contracts or business relationships between Plaintiff and its technicians. *Id.* at 5.

Plaintiff responds that its SAC "specifically alleges that Frontier improperly terminated African-American technicians in South Texas and Wisconsin" and insisted Defendant Butler hire Caucasian replacement technicians.  Doc. No. 73 at 4 (citing Doc. No. 55 at ¶¶ 7(a)-(e), 14-16). Plaintiff contends this is sufficient to plead "willful and intentional interference with contracts between Plaintiff and its technicians as well as the contract between Plaintiff and Butler." *Id.*

To establish a willful and intentional act of interference, "a plaintiff is not required to prove intent to injure but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). "In other words, the alleged tortfeasor must have carried out the interfering act with 'the desire[] to interfere with [the] contract or [the belief] that interference was substantially certain to result from its action." *Wolf v. Cowgirl Tuff Co.*, No. 1:15-CV-1195 RP, 2016 WL 4597638, at *4 (W.D. Tex. Sept. 2, 2016) (alternations in original) (citing *Sw. Bell Tel. Co.*, 843 S.W.2d at 472). Additionally, "the interfering party must have 'actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Id.* (quoting *Steinmentz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277-78 (Tex. App.—San Antonio 1985, writ refused, n.r.e.)).

The SAC alleges facts sufficient to plead a willful and intentional act of interference by Frontier. The SAC states that "Butler and Frontier conspired to destroy Direct TEK's business . . . because of Direct TEK's refusal to acquiesce to . . . Defendants' illegal practice of engaging in racial prejudice." Doc. No. 55 at ¶ 7(e). The SAC then alleges two incidents where Frontier "insisted" or "pressure[d]" Butler to engage in racially discriminatory behavior. *Id.* Plaintiff further alleges that "Defendant Frontier intentionally disparaged and insisted to Butler, . . . with an intent to harm, that Direct TEK be fired, thereby directly interfering with an existing business relationship[3] between Direct TEK and Butler." *Id.* at ¶¶ 7(e), 11. These facts are sufficient to support the reasonable inference, at this stage of the proceedings, that Frontier desired to interfere

---

[3] Plaintiff alleges there was an existing contract between Butler and Direct TEK. Doc. No. 55 at ¶ 15.

with the contract between Plaintiff and Butler when it "insisted to Butler . . . that Direct TEK be fired . . . ." Doc. No. 55 at ¶ 11; *see Wolf*, 2016 WL 4597638, at *4. The allegations are also sufficient to support the reasonable inference that Frontier desired to interfere with the contracts between Plaintiff and its technicians when it allegedly improperly fired African-American technicians placed on its projects. Further, the totality of the facts alleged in the SAC allow for the reasonable inference that Frontier knew or reasonably should have believed in the existence of the contract between Plaintiff and Butler and the contracts between Plaintiff and its technicians.  This is sufficient to plead a willful and intentional act of interference by Frontier. *See Wolf*, 2016 WL 4597638, at *4 (finding the plaintiffs had alleged facts sufficient to satisfy the willful and intentional element for initial pleading purposes where the facts pled "allow[ed] for the reasonable inference that Defendant knew of or reasonably should have believed in the existence of the contracts in question, as well as that Defendant desired to interfere with the contracts or believed such interference was substantially certain to result from its actions").

Plaintiff has sufficiently pled its tortious interference with a contract claim against Frontier. Accordingly, the Court recommends denying Frontier's motion to dismiss with respect to this claim.

### 2.  Business Disparagement

The elements of a business disparagement claim are: "(1) publication by the defendant of false and disparaging words about the plaintiff; (2) malice; (3) lack of privilege; and (4) special damages to the plaintiff." *Fluor Enters., Inc. v. Conex Int. Corp.*, 273 S.W.3d 426, 433 (Tex.App.—Beaumont 2008, pet. denied) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

Frontier argues that Plaintiff failed to identify "what statements Direct TEK claims amount to defamation." Doc. No. 67 at 6. In response, Plaintiff argues it "provided sufficient factual pleading in its [SAC] to state a claim for defamation that is plausible on its face." Doc. No. 73 at 5-6. Plaintiff argues that "[t]aking the complaint as a whole, . . . it is clear that Plaintiff has provided sufficient notice under F.R.C.P. 8 that it is entitled to relief on its defamation claim." *Id.* at 6.

The SAC states that "Defendant Frontier, by its actions as outlined in Paragraph III.7.d., intentionally and maliciously disparaged Direct TEK to Butler . . . ." Doc. No. 55 at ¶ 24. The referenced paragraph provides:

> In September and October 2017, Butler intentionally withheld and delayed payment to Direct TEK for services rendered, then lied to both Direct TEK and many technicians about the timing of payment, all in a concerted effort to tarnish Direct TEK's reputation, cause distrust among Direct TEK technicians, and bolster Butler's efforts to have the technicians leave Direct TEK for competitors.

*Id.* at ¶ 7(d). The SAC also states that "management with Frontier disparaged Direct TEK and conspired with Butler to terminate its business relationship with Direct TEK." Doc. No. 55 at ¶ 7(e).

The SAC's failure to plead or identify a disparaging statement made by Frontier is fatal to its business disparagement claim. In *Hill v. Optum*, the court found a plaintiff failed to plead a plausible claim for defamation[4] where the plaintiff alleged "[the defendant] intentionally published false statements to numerous persons, including management/human resources personnel . . . about Plaintiff to justify the termination." No. 3:17-CV-0775-D, 2017 WL 2378299, at *4 (N.D. Tex. June 1, 2017). The court explained that "[w]ithout any facts to discern the specific nature of what

---

[4] "A business disparagement claim is similar in many respects to a defamation action. The two torts differ in that defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (internal citation removed) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

was said, there is no basis on which the court can infer a defamatory meaning that would allow [the plaintiff] to recover from [the defendant]." *Id.*

Similarly, here, Direct TEK failed to allege or identify a false or disparaging statement made by Frontier. *See id.* In fact, the paragraph that Plaintiff cites for support wholly fails to mention Frontier and makes no allegation that Frontier made disparaging statements to Butler. Accordingly, the Court recommends dismissing Plaintiff's business disparagement claim against Frontier. *See id.* ("Merely reciting the elements of a defamation claim, without pointing to a single statement that [the defendant] made, fails to plead a plausible claim.").

### 3.   *Discrimination and Retaliation Under 42 U.S.C. § 1981*

Section 1981 protects the rights of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a). Section 1981 offers relief from racial discrimination that "blocks the creation of a contractual relationship" or "impairs an existing contractual relationship," but only where "the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006).

To state a claim, the plaintiff must allege "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). Frontier argues Plaintiff failed to sufficiently plead the first two elements. Doc. No. 67 at 6-8.

Frontier first argues that Direct TEK, a Texas limited liability company, does not fit within the definition of a protected racial class and cannot, therefore, bring a discrimination claim under section 1981. Doc. No. 67 at 7. Frontier argues that Direct TEK made no allegations that it

10

maintains a racial identity and relies heavily on *White Glove Staffing, Inc. v. Methodist Hospitals of Dallas*, for the contention that Direct TEK's section 1981 claim must be dismissed. No. 3:17-CV-1158-K, 2017 WL 3925328, at *1 (N.D. Tex. Sept. 7, 2017).

In response, Plaintiff notes that several other circuits have held that a corporation may maintain a section 1981 claim. *See*, *e.g.*, *Des Vergnes v. Seekonk Water Dist.*, 601 F.2d 9, 13-14 (1st Cir. 1979). Plaintiff argues that it is a member of a protected class because it is a minority owned company. Doc. No. 73 at 9.

In *White Glove Staffing, Inc.*, "White Glove, a staffing agency, began contract negotiations to provide" employees for the defendants. 2017 WL 3925328, at *1. Before the parties had negotiated a contract, the defendants asked White Glove to send it a prep cook, and White Glove sent Carolyn Clay, an African American woman. *Id.* "Clay worked for [the defendants] for only a few days before [the defendants] told White Glove that Clay was not working out and asked White Glove to send someone else." *Id.* White Glove, unable to find another prep cook on short notice, sent Clay back to the defendants the next day. *Id.* The defendants told Clay to leave and "contacted White Glove and allegedly stated the head chef only wanted Hispanic employees." *Id.* Subsequently, the plaintiffs, Carolyn Clay and White Glove, brought a discrimination claim under 42 U.S.C. § 1981. *Id.* The Defendants filed a Rule 12(b)(6) motion arguing that White Glove, a corporation without a racial identity, did not have standing to bring a direct discrimination claim under section 1981. *Id.* at *1, *3. The court noted that some circuits have found an entity may acquire an imputed racial identity sufficient to maintain a claim under section 1981, but the Fifth Circuit has not yet addressed imputed racial identity. *Id.* at *3. The court then reasoned that "[e]ven assuming the Fifth Circuit would allow a company to acquire an imputed racial identity, White Glove has not provided any facts that indicate it has acquired a racial identity." *Id.* The court further

11

reasoned that "[b]ecause White Glove is a corporation *without a racial identity,* White Glove has not shown it is a member of a racial minority." *Id.* (emphasis added). Therefore, the court found White Glove did not have standing to bring a direct discrimination claim under section 1981. *Id.*

However, in *Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, the Fifth Circuit found that a plaintiff company "adequately [pled] the first element of a § 1981 claim by alleging that Body by Cook is a '100% African American-owned body shop.'" 869 F.3d 381, 386 (5th Cir. 2017).

Direct TEK sufficiently pled the first element of a § 1981 claim by alleging it is a minority owned business. In contrast to *White Glove Staffing, Inc.*, Direct TEK alleges its owner is a racial minority. 2017 WL 3925328, at * 3. Plaintiff's allegation that it is owned by a racial minority is sufficient to allege the first element of a discrimination claim under section 1981. *See Body By Cook, Inc.*, 869 F.3d at 386.

The parties next dispute whether Plaintiff adequately alleged discriminatory intent. Frontier argues that Direct TEK has not alleged Frontier discriminated against Direct TEK on the basis of race. Doc. No. 67 at 7. Direct TEK responds by arguing Frontier discriminated against it by directing the firing of the African-American technicians and insisting they be replaced with "Caucasian" technicians. Doc. No. 73 at 9. Direct TEK also argues there is "direct evidence" of discriminatory intent in the record and cites to the email requesting a "Caucasian" replacement technician. *Id.*

"Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, . . . discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence . . . ." *Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted and alterations in original). "An allegation that similarly situated

non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing the section 1981 claim'" *Id.* (citation omitted).

In *Body by Cook*, the Fifth Circuit examined whether the plaintiffs had adequately pled a section 1981 claim. *Id.* at 386-87. There, the court recognized that the issue of whether the plaintiffs had adequately alleged discriminatory intent was a close question. *Id.* at 386. With respect to most of the defendants, the court found that the plaintiffs failed to plead discriminatory intent. *Id.* at 387. The court explained that "Plaintiffs make only generalized allegations regarding Defendants' alleged disparate treatment of Body By Cook versus non-minority-owned shops." *Id.* The court further explained that these allegations are not sufficient to plead discriminatory intent because "[t]hey fail to identify which Defendant discriminated or specific instances when Body by Cook was refused a contract but a similarly situated non-minority owned body shop was given a contract." *Id.* (citation omitted).

However, the Fifth Circuit found the allegations against defendant State Farm sufficient to plead discriminatory intent. *Id.* at 387. The court explained that, with respect to State Farm, the complaint contained more "specific allegations." *Id.* The plaintiffs alleged "that a State Farm representative visited and inspected Body by Cook and found that it met all of State Farm's qualifications for being a Direct Repair Ship, but that State Farm declined to allow Body by Cook to participate in its Direct Repair Program." *Id.* The plaintiffs also alleged "that State Farm told Body by Cook that it was not admitting body shops into the Direct Repair Program but State Farm then admitted a non-minority owned body shop . . . ." *Id.* These allegations, the court explained, "make plausible the inference that the difference in treatment was because of Body by Cook's minority-owned status." *Id.*

Here, Plaintiff alleges two instances of racial prejudice by Frontier demonstrate discriminatory intent. *See* Doc. No. 55 at ¶¶ 7(e), 28. First, Plaintiff alleges Frontier insisted Butler fire "numerous African-American technicians placed in Southeast Texas by Direct TEK . . . ." *Id.* at ¶ 7(e). Second, Plaintiff alleges Frontier fired an African-American technician and then pressured Butler to seek a replacement technician that was "Caucasian." *Id.* Plaintiff then alleges that it "refused to comply with Frontier/Butler/Nab's acts of racial prejudice and insistence on only Caucasian technicians," and, subsequently, Direct TEK was removed from all of Frontier's projects. *See* Doc. No. 55 at ¶ 7(e); Doc. No.. 70-2 at 1.  These allegations, taken as true and in combination with the email from Butler requesting a "preferably 'Caucasian'" replacement technician, make plausible the inference that Frontier intended to discriminate against Plaintiff based on race. *See Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017). Accordingly, at this stage of the proceedings, Direct TEK's allegations are sufficient to plead discriminatory intent.

The Court recommends denying Frontier's motion with respect to this claim.[5] Because Frontier only challenged the first two elements of Plaintiff's discrimination claim, the Court does not reach the final element.

*4. Civil Conspiracy*

To state a claim for civil conspiracy, a plaintiff must allege:

(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)).

---

[5] Frontier did not address Plaintiff's retaliation claim, and the Court declines to address this claim *sua sponte*.

Plaintiff alleges two theories of conspiracy with respect to Defendants. Doc. No. 73 at 10. First, Direct TEK alleges Defendants conspired to fire the African-American technicians in southeast Texas and Wisconsin. *Id.* Frontier argues the SAC does not plead that Frontier and Butler reached a meeting of the minds to engage in discriminatory conduct. Doc. No. 75 at 10.

"To satisfy the 'meeting of the minds' element, [the plaintiff] must allege that defendants had the 'specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Samsung Elecs. Am., Inc. v. Chung*, No. 3:15-CV-4108-D, 2017 WL 635031, at *13 (N.D. Tex. Feb. 16, 2017) (citation omitted). To do this, a plaintiff "must allege that there was a 'preconceived plan and unity of design and purpose.'" *Id.* (citing *Goldstein v. Mortenson*, 113 S.W.3d 769, 779 (Tex. App.—Austin 2003, no pet.)); *Baron v. Baron*, No. 3:16-CV-3465-C-BH, 2018 WL 1156002, at *9 (N.D. Tex. Feb. 13, 2018) (internal quotation marks removed) ("The plaintiff must allege that there was a preconceived plan and unity of design and purpose."). "For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Samsung Elecs. Am., Inc.,* 2017 WL 635031, at *13 (citing *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)).

The SAC states, "Butler and Frontier conspired to destroy Direct TEK's business . . . because of Direct TEK's refusal to acquiesce to such Defendants' illegal practice of engaging in racial prejudice." Doc. No. 55 at ¶ 7(e). It further states that Frontier "insist[ed]" Butler fire African-American technicians in Southeast Texas and "likely . . . pressure[d]" Butler to seek a Caucasian replacement technician. *Id.* The SAC further states, "Defendants conspired to commit the racially discriminatory and illegal acts set forth above . . . . Defendants acted in concert and agreed to commit and take such actions related to the termination of black employees and insistence on Caucasian replacements . . . ." *Id.* at ¶ 30.

These allegations fail to state a preconceived plan or a time and place at which the Defendants had a meeting of the minds. *See Samsung Elecs. Am., Inc.*, 2017 WL 635031, at *13 (dismissing civil conspiracy claim because "Samsung failed to allege a preconceived plan or a time and place at which All Pro and other defendants had a meeting of the minds regarding the object of the conspiracy."); *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 794 (N.D. Tex. 2009) (dismissing civil conspiracy claim because, *inter alia*, the complaint "fail[ed] to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties"); *Patel v. Pac. Life Ins. Co.*, No. 3:08-CV-0249-B, 2009 WL 145626, at *16 (N.D. Tex. May 22, 2009) (dismissing civil conspiracy claim because, *inter alia*, "[t]he conspiracy claim identifie[d] no specific time or place in which any meeting of the minds" took place). Accordingly, Plaintiff failed to state a claim that Defendants conspired to fire African-American technicians.

Second, Plaintiff argues its SAC alleged that "management with Frontier conspired with Butler to terminate its business relationship with Direct TEK." Doc. No. 73 at 10. Again, Plaintiff fails to allege a preconceived plan or a time and place at which the Defendants had a meeting of the minds with respect to the object of this conspiracy. *See Samsung Elecs. Am., Inc.*, 2017 WL 635031, at *13; *Berry*, 608 F.Supp.2d at 794; *Patel*, 2009 WL 145626, at *16. Accordingly, the Court recommends dismissing Direct TEK's civil conspiracy claim.

## II.    Defendant Butler America, LLC's Motion to Dismiss Under Rule 12(b)(6):

Butler argues that Plaintiff's SAC fails to state a claim upon which relief can be granted. Doc. No. 69 at 1. Butler seeks to dismiss Plaintiff's claims of: (1) misappropriation of trade secrets; (2) tortious interference with existing business relationships; (3) tortious interference with prospective business relations; (4) tortious interference with contract; (5) breach of fiduciary duty;

(6) unjust enrichment; (7) common law fraud; (8) business disparagement; (9) discrimination and retaliation under 42 U.S.C. § 1981; and (10) civil conspiracy. Doc. No. 69 at 1-11.

  *1. Misappropriation of Trade Secrets*

 "Trade secret misappropriation under Texas law is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (citation omitted). Butler only contests whether Direct TEK pled adequate facts to allege the Confidential Information qualified as a trade secret under the Texas Uniform Trade Secret Act ("TUTSA"). Doc. No. 69 at 2. Under the TUTSA, a "trade secret" means

> all forms and types of information . . . if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A)-(B).

 Butler argues that Plaintiff failed to plead facts showing Direct TEK took reasonable efforts to keep the Confidential Information secret, the Confidential Information was not generally known, and the Confidential Information was not readily ascertainable through proper means. Doc. No. 69 at 2.

 Direct TEK responds that Texas courts have recognized that "[i]tems such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets." *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet.

dism'd). Direct TEK argues its SAC specifically alleges the existence of a trade secret. Doc. No. 71 at 4.

At a minimum, Direct TEK has adequately pled the existence of a trade secret under the TUTSA. Plaintiff's SAC alleges that "Direct TEK kept [the Confidential Information] private and it was not shared with any other person or firm, other than Butler." Doc. No. 55 at ¶ 7(a). The Confidential Information "was then only shared with Butler, on a confidential basis . . . ." *Id.* "Butler knew the [Confidential Information] was confidential and not to be shared with any third parties, who could take advantage of and gain independent economic value from having the compilation of data and information they would not otherwise have access to by proper means . . . ." *Id.* Finally, the SAC alleges the Confidential Information created a "competitive advantage" for Direct TEK by allowing Direct TEK to "quickly mobilize technicians needed virtually anywhere in the country." *Id.* Based on the facts alleged in the SAC as a whole, Direct TEK sufficiently pled that it took reasonable steps to protect the Confidential Information, and the Confidential Information was not generally known nor ascertainable through proper means.

Viewing the facts in the light most favorable to Plaintiff, Direct TEK's trade secret misappropriation claim includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, the Court recommends denying Butler's motion to dismiss with respect to this claim.

### 2. *Tortious Interference with Prospective Business Relationships*

To state a claim for tortious interference with prospective business relations, a plaintiff must allege:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the

defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. [6]

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Butler argues: (1) Plaintiff has not identified a specific relationship that was allegedly interfered with; (2) Plaintiff failed to plead facts showing there was a reasonable probability that Plaintiff would have entered a business relationship with a specific third party; and (3) Plaintiff has not pled an independently tortious or unlawful act related to Plaintiff's interference claim. Doc. No. 69 at 4. To start, Direct TEK's SAC alleges Butler interfered with the relationship between Direct TEK and its technicians. *See* Doc. No. 55 at ¶¶ 11, 13. This is sufficient to identify an interfered with relationship at this stage of the proceedings.

## A. Reasonable Probability of Prospective Business Relationship

"To establish tortious interference with prospective business relations, one must first show more than speculation or the bare possibility that a plaintiff would have entered into a future business relationship." *Cooper v. Harvey*, No. 3:14-CV-4152-B, 2016 WL 4427481, at *11 (N.D. Tex. Aug. 21, 2016). "While 'mere negotiations' are not enough, a pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations." *Id.* (citation omitted).

Here, Plaintiff alleges it had an existing business relationship with its technicians. *See N. Cypress Med. Ctr. Operating Co. v. Gallagher Benefit Servs.*, No. 4:11-cv-00685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012) (finding an existing business relationship sufficient to plead the first element of a tortious interference with prospective business relationship claim);

---

[6] Butler only challenges whether Plaintiff identified a specific relationship that was allegedly interfered with, whether Plaintiff pled facts showing there was a reasonable probability that Plaintiff would have entered a business relationship with a specific third party, and whether Plaintiff pled an independently tortious or unlawful act. Doc. No. 69 at 4. Therefore, the Court constrains its analysis to those issues.

Doc. No. 55 at ¶ 6 ("Plaintiff contracts with many telecommunications technicians and places them across the country via its contracts and business relationships . . . ."). This is sufficient to plead the existence of the first element.

### B.  Independently Tortious or Unlawful Act

"[T]o recover for tortious interference with a prospective business relation[,] a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "Independently tortious" does not mean that a plaintiff must be able to prove an independent tort. *Id.* Rather, it means "only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort." *Id.* Additionally, "[c]onduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations[.]" *Id.*

As discussed in Section II.7 *infra*, Plaintiff sufficiently pled a business disparagement cause of action against Butler, which is the type of independently tortious conduct necessary to establish tortious interference with business relationships. Accordingly, Plaintiff pled facts sufficient to allege that Butler's conduct was independently tortious or unlawful.

Plaintiff pled facts sufficient to state a claim for relief of tortious interference with prospective business relationships. Accordingly, the Court recommends denying Butler's motion to dismiss with respect to this claim.

### 3.  *Tortious Interference with Contract*

To state a claim for tortious interference with contract, a plaintiff must allege: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l*

*Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)). Butler argues Plaintiff failed to sufficiently plead the first three elements.

### A. The existence of a valid contract subject to interference

Butler argues Direct TEK failed to identify a specific contract that was interfered with. Doc. No. 69 at 3, 5. Direct TEK argues it specifically referenced "existing business relationships with technicians employed by and contracted to Direct TEK . . . ." Doc. No. 71 at 7-8.

"To prevail on tortious interference with contract, a plaintiff must allege the existence of a specific contract." *Randall v. L-3 Commc'ns Corp.*, No. 3:16-CV-3000-G, 2017 WL 412416, at *3 (N.D. Tex. Jan. 31, 2017) (citing *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet denied).

While Plaintiff has not described its contracts with its technicians in detail, the facts alleged are sufficient to support the inference that contracts existed between Plaintiff and its technicians that were subject to interference. In its SAC, Direct TEK alleges that "Plaintiff contracts with many telecommunications technicians and places them across the country via its contracts and business relationships . . . ." Doc. No. 55 at ¶ 6. Direct TEK further alleges it "placed" technicians with Butler in Southeast Texas and "placed one or more African-American technicians with Butler on a project for Frontier." *Id.* at ¶ 7(e). Direct TEK further alleges "[t]here was/is an existing contract between Direct TEK and the technicians who were fired by, solicited and lied to by Defendants." *Id.* at ¶ 15. Taking these facts as true and reading the SAC in the light most favorable to Plaintiff, Direct TEK has adequately pled the existence of a valid contract that is subject to interference.

### B. Willful and Intentional Interference With a Contract

Butler argues that to establish the element of a willful and intentional act of interference, the Plaintiff "must present evidence that some obligatory provision of a contract has been interfered with." Doc. No. 69 at 3 (citing *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.— Houston [14th Dist.] 2011, pet. denied)). Thus, Butler argues, Plaintiff failed to adequately allege the element of a willful and intentional act of interference because Plaintiff failed to identify any obligatory provision of any contract between Plaintiff and its technicians that was breached. *See id.* at 3-4.

Butler's argument fails at the pleading stage. "To establish tortious interference with [an] existing contract, a plaintiff is not limited to showing the contract was actually breached." *Lamont v. Vaquillas Energy Lopeno, Ltd.*, 421 S.W.3d 198, 216 (Tex. App.—San Antonio 2013, no pet.) (quoting *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 359-60 (Tex. App.—Houston [1st Dist. 2012, no pet.)). Rather, "[a]ny interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable." *Id.* (quoting *Khan*, 371 S.W.3d at 359-60). Here, Plaintiff alleged that a contract existed between Plaintiff and its technicians, and "Butler improperly contacted numerous Direct TEK personnel via an email from Larry Ferracioli, encouraging and soliciting them to terminate their relationship with Direct TEK . . . ." Doc. No. 55 at ¶ 7(b). At the very least, Plaintiff pled the existence of a contract and alleged actions by Butler that, if true, would make the performance of the contracts between Plaintiff and its technicians more burdensome or difficult. This is sufficient at the pleading stage to maintain a tortious interference with contract claim.

C.  Proximate Cause

"To show proximate cause, 'a plaintiff must allege that 'the defendant took an active part in persuading a party to a contract to breach it.'" *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (citation omitted). "Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach." *Id.* (citation omitted). "It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *Id.* (citation omitted).

In *Wolf v. Cowgirl Tuff Co.*, the plaintiffs' alleged that the "[d]efendant contacted [plaintiff's client] and encouraged [the client] to sever ties with [p]laintiffs." No. 1:15-CV-1195 RP, 2016 WL 4597638, at *5 (W.D. Tex. Sept. 2, 2016). The court found this allegation sufficient to demonstrate the defendant took an active part in persuading the client to breach its contracts with plaintiffs. *Id.*

Here, Butler argues that "Plaintiff . . . failed to plead facts that support how any interference proximately caused damages to Plaintiff." Doc. No. 69 at 4. However, similar to *Wolf*, Direct TEK alleged that "Butler improperly contacted numerous Direct TEK personnel" and encouraged and solicited them to terminate their relationship with Direct TEK. *See Wolf*, 2016 WL 4597638, at *5; Doc. No. 55 at ¶ 7(b). This allegation is sufficient to plead that Butler took an active part in persuading Direct TEK's technicians to terminate their contracts with Plaintiff. *See Wolf*, 2016 WL 4597638, at *5.

Direct TEK has sufficiently pled its tortious interference with a contract claim. Accordingly, the Court recommends denying Butler's motion to dismiss with respect to this claim.

### 4.   *Breach of a Fiduciary Duty*

In Texas, to establish a claim for breach of fiduciary duty, a plaintiff must show: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). "A fiduciary relationship may arise from formal and informal relationships and may be created by contract." *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 808 (5th Cir. 2017) (quoting *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, no pet.)). However, an informal fiduciary relationship "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Id.* (citation omitted). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* at 809 (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)).

Butler argues that Plaintiff has not pled facts that make the existence of a fiduciary relationship between Plaintiff and Butler plausible. Doc. No. 69 at 5. Butler argues that only a "normal business relationship" existed between Plaintiff and Butler, and that relationship does not give rise to a fiduciary duty. *Id.* at 6. Plaintiff responds by arguing it shared confidential information with Butler on a confidential basis, and Butler knew the information was not to be shared. Doc. No. 71 at 8 (citing Doc. No. 55 at ¶ 18).

Plaintiff fails to allege facts that make it plausible that a "special relationship of trust and confidence . . . exist[ed] prior to, and apart from, the agreement made the basis of the suit." *Jacked*

*Up, LLC*, 854 F.3d at 809. Plaintiff makes no factual allegations that indicate a "special relationship of trust and confidence" existed prior to the sharing of the Confidential Information under the "Contract." *See* Doc. No. 55. The SAC does provide that: "Apart from the Contract, and because it was necessary for Plaintiff to share confidential and proprietary information with Butler . . . that was the heart and soul of Plaintiff's business, . . . there existed a relationship of trust between Plaintiff and Butler that constituted a fiduciary relationship." *Id.* at ¶ 18. However, this conclusory allegation is insufficient to allege that a "special relationship of trust and confidence" existed prior to the agreement made the basis of this suit. *Jacked Up, LLC*, 854 F.3d at 809; *see NA Ins. Servs. Holding Corp. v. HILB Grp. of Indiana, LLC*, No. 4:17CV600-ALM-KPJ, 2017 WL 5476797, at *3 (E.D. Tex. Oct. 23, 2017) (dismissing a claim for breach of fiduciary duty where the plaintiff failed to allege facts that "indicate[d] that a prior fiduciary relationship had previously arisen between" the parties), *report and recommendation adopted*, No. 4:17-CV-600, 2017 WL 5187604 (E.D. Tex. Nov. 9, 2017).

Therefore, the Court recommends dismissing Plaintiff's breach of fiduciary duty claim against Butler.

### 5. *Unjust Enrichment*

Butler argues that unjust enrichment is not an independent cause of action, except in very limited circumstances that do not exist in the present case. Doc. No. 69 at 6. Plaintiff points out that Texas case law does not "necessarily" support Butler's argument that unjust enrichment is not a separate cause of action. Doc. No. 71 at 9. Plaintiff argues it alleged a cause of action for unjust enrichment and points to one paragraph in its Amended Complaint that reads:

> By using and distributing knowledge and information gained from Plaintiff, including the [Confidential Information], Defendant Butler has obtained a benefit from Plaintiff by fraud, duress, or the taking of an undue advantage. More specifically, Butler was unjustly enriched by providing such information to one or

more competitors of Plaintiff, which allowed Butler to continue its business relationship with Frontier . . . .

*Id.* (citing Doc. No. 55 at ¶ 20).

There appears to be a split of authority in Texas courts about whether unjust enrichment is an independent cause of action. *Compare Argyle ISD ex. Rel. Bd. Of Trustees v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.) (noting "[u]njust enrichment, itself, is not an independent cause of action . . . .") *with   Pepi Corp. v. Galliford*, 254 S.W.2d 457, 469 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action."). However, "even in the cases holding unjust enrichment is not an independent cause of action, the courts have still allowed recovery based on the *theory* of unjust enrichment so long as a 'person has obtained a benefit from another by fraud, duress, or taking of undue advantage.'" *Blue Spike, LLC v. Tex. Instruments, Inc.*, No. 6:12-cv-499, 2014 WL 11848751, at *3 (E.D. Tex. July 25, 2014) (emphasis in original) (quoting *Newington Ltd. v. Forrester*, No. 3:08-cv-0846, 2008 WL 4908200, at *4 (N.D. Tex. Nov. 13, 2008)).

Regardless of whether unjust enrichment is an independent cause of action, Plaintiff has failed to sufficiently plead that Butler obtained a benefit from Plaintiff by fraud, duress, or taking of undue advantage. Plaintiff's SAC states that by distributing the Confidential Information to Plaintiff's competitors, it allowed Butler to continue its relationship with Frontier. Doc. No. 55 at ¶ 20. This conclusory statement is insufficient to plead that Butler obtained a benefit from Plaintiff by fraud, duress, or taking of undue advantage. Indeed, Plaintiff fails to allege any facts that show it was somehow entitled to Butler's relationship with Frontier. Accordingly, Plaintiff has failed to plead facts that make its unjust enrichment claim plausible on its face, and the Court recommends dismissing Plaintiff's unjust enrichment claim.

6.   *Common Law Fraud*

To state a claim for common law fraud, a plaintiff must show:

(1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re C.M.V.*, 479 S.W.3d 352, 361 (Tex. App.—El Paso 2015, no pet.) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001)). To state a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Plaintiff points to "two factual events [in its SAC] that support its claim for fraud." Doc. No. 71 at 9-10. First, Plaintiff alleges Butler "made the material misrepresentation that it would keep Plaintiff's proprietary information confidential when in fact Butler had no intention of doing so . . . ." *Id.* at 10 (citing Doc. No. 55 at ¶ 7(a)). However, the SAC does not contain allegations that support Plaintiff's contention. In fact, paragraph 7(a) of Plaintiff's SAC not only fails to allege a misrepresentation made by Butler related to the confidential information, but it fails to allege any misrepresentation at all. *See* Doc. No. 55 at ¶ 7(a). Accordingly, this alleged "event" cannot be the basis of Plaintiff's common law fraud claim.

Second, Plaintiff contends Butler's misrepresentation to Plaintiff concerning the timing of payments to Plaintiff can support its fraud claim. Doc. No. 71 at 10 (citing Doc. No. 55 at ¶ 7(d)). Plaintiff alleges, in September and October of 2017, Butler misrepresented "that Direct TEK could not be paid for its services by Butler . . . ." Doc. No. 55 at ¶ 7(c). Plaintiff states that Butler then "advised that Direct TEK had already been paid for its services by Butler . . . , when . . . Direct

TEK had not been paid and Butler knew it had not been paid." *Id.*  Plaintiff further alleges that, in September and October 2017, "Butler intentionally withheld and delayed payment to Direct TEK for services rendered, then lied to both Direct TEK and many technicians about the timing of payment . . . ." *Id.* at ¶ 7(d). These general allegations do not meet Rule 9(b)'s particularity requirement because they fail to allege the "who, what, when, where, and how" required to state a claim with particularity. *See Burbank v. Compass Bank*, No. 1:15-CV-60, 2016 WL 3618691, at *3-4 (E.D. Tex. Mar. 29, 2016). Accordingly, the Court recommends dismissing the Plaintiff's common law fraud claim.

### 7.  Business Disparagement

The elements of a business disparagement claim are: "(1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)). "[A] business disparagement defendant may be held liable 'only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion.'" *Id.* (citation omitted).

Butler contends that Plaintiff failed to present "any support beyond a conclusory statement that any allegedly false statement was made with malice." Doc. No. 69 at 8. Plaintiff responds that the SAC details the false statements and the "bad motive or malice" that motivated the statements. Doc. No. 71 at 10 (citing Doc. No. 55 at ¶¶ 7(c)-(e)).

The SAC provides: (1) "Butler falsely advised Frontier and numerous technicians that Direct TEK was essentially engaging in what amounts to criminal conduct[,]" Doc. No. 55 at ¶ 7(c); (2) "Butler . . . also advised that Direct TEK had already been paid for its services by Butler

in order to suggest that Direct TEK was keeping the money instead of paying the technicians, when in fact Direct TEK had not been paid and Butler knew it had not been paid[ ,]" *id.*; Butler "lied to both Direct TEK and many technicians about the timing of payment, all in a concerted effort to tarnish Direct TEK's reputation, cause distrust among Direct TEK technicians, and bolster Butler's efforts to have the technicians leave Direct TEK for competitors[,]" *id.* at ¶ 7(d).

When viewed in the light most favorable to Plaintiff, Direct TEK plausibly alleged Butler published false and disparaging information with malice.[7] Accordingly, the Court recommends denying the motion to dismiss Plaintiff's claim for business disparagement.

8. *Discrimination and Retaliation under 42 U.S.C. § 1981*

A. Retaliation

To state a retaliation claim under § 1981, a plaintiff must allege "(1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) (citing *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339, 340 n.8 (5th Cir. 2003)). "Protected activity is defined as 'opposition to any practice' that is rendered unlawful by antidiscrimination statutes, including the 'making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing' under the statutes." *Johnson v. Mixon*, No. CIV.A. 13-2629, 2013 WL 5561750, at *3 (E.D. La. Oct. 8, 2013) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2000)). An adverse employment action includes any "materially adverse change in the terms and conditions of

---

[7] Butler only contests whether Plaintiff adequately pled malice; therefore, the Court constrains its analysis to the issue of malice. Butler also argues the alleged statement that "Direct TEK would keep, steal, and/or run away with the money" is an expression of opinion protected by the First Amendment of the United States Constitution. Doc. No. 69 at 8. The Court does not reach this issue since it finds Plaintiff's other averments sufficient to plausibly allege Defendant acted with malice.

employment," including termination. *Id.* (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006)); *see Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 777 (S.D. Tex. 2009) ("Job termination is clearly an adverse employment action."); *Roberts v. Lubrizol Corp.*, No. CV 4:12-3272, 2013 WL 12099843, at *7 (S.D. Tex. June 28, 2013) ("In the retaliation context, an adverse employment actions include 'discharges, demotions, refusals to hire, refusals to promote, and reprimands,' . . . and any other action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" ). "Close temporal proximity between an employer's knowledge of a protected activity and an adverse employment action may be sufficient to establish causation." *Johnson*, 2013 WL 5561750, *3 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)).

Butler argues Plaintiff did not "suffer an adverse action regarding terms or conditions of employment." Doc. No. 69 at 9. Butler also argues that Plaintiff failed to allege a causal connection between the protected activities and the adverse action. *Id.*

Plaintiff responds that "[f]ollowing Plaintiff's refusal [to engage in discriminatory conduct], Defendant retaliated against Plaintiff by sharing confidential information to third party competitors, disparaging Plaintiff to technicians and other businesses, and terminated [sic] Plaintiff." Doc. No. 71 at 11-12 (citing Doc. No. 55 at ¶ 7(e)).

Plaintiff's SAC contains sufficient factual references to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The SAC states that "Defendants sought to retaliate against Direct TEK" for refusing to acquiesce to Defendants' practice of engaging in racial prejudice. Doc. No. 55 at ¶ 7(e). The email from Butler's Susan Nab that requested a Caucasian replacement technician was dated August 28, 2017. *See* Doc. No. 70-1. The SAC further provides that "Direct TEK . . . refused to comply with Frontier/Butler/Nab's acts of

racial prejudice and insistence on only Caucasian technicians, resulting in subsequent efforts by Defendants to retaliate against Direct TEK." Doc. No. 55 at ¶ 7(e). Plaintiff also submitted emails from Butler that indicate that Direct TEK was removed from all Frontier projects in, or around, October of 2017. *See* Doc. Nos. 70-2, 70-3. Also, the SAC alleges that "Direct TEK was terminated."[8] *See* Doc. No. 55 at ¶ 7(a), ¶ 30 ("Defendants conspired and terminated Plaintiff because Plaintiff would not abide by their discriminatory requests . . . ."). Thus, Plaintiff at the very least alleged an adverse employment action—*i.e.*, termination. However, the sharing of Confidential Information by Butler was alleged to have occurred in April of 2017, which is prior to any alleged racially discriminatory requests by Butler. *See* Doc. No. 55 at 7(a). Accordingly, the sharing of Confidential Information is not an adverse employment action because it occurred prior to the alleged protected conduct.

Additionally, taking all facts as true and in the light most favorable to Plaintiff, the SAC alleges sufficient facts to plead a causal connection between the protected activity (*i.e.*, refusing to comply with Defendants' alleged acts of racial prejudice) and the adverse action (*i.e.*, termination). In August 2017, Butler requested a Caucasian replacement technician. *See* Doc. No. 70-1. Sometime after that request, Direct TEK directly communicated with Butler and Susan Nab and refused to comply with their request to hire a Caucasian replacement technician. *See* Doc. No. 55 at 7(e). Approximately two months later, in October of 2017, Butler terminated its relationship with Direct TEK. *See* Doc. No. 70-3; Doc. No. 55. This temporal relationship is sufficient to plead a causal connection at this early stage of the litigation. Accordingly, Plaintiff has sufficiently pled that it engaged in a protected activity, suffered an adverse employment action, and the protected

---

[8] Plaintiff does not indicate when it was terminated. However, the email from Butler indicating that it is no longer partnering with Direct TEK "to support business-as-usual . . . efforts or the hurricane recovery efforts" was dated October 14, 2017. Indulging all factual inferences in Plaintiff's favor, the Court infers Direct TEK was terminated on, or around, October 14, 2017. *See* Doc. No. 70-3.

activity is causally connected to the adverse action. Therefore, the Court recommends denying Butler's motion with respect to Plaintiff's retaliation claim.

### B.  Discrimination

To state a claim for discrimination under section 1981, the plaintiff must show "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997). "Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, . . .  discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence . . . ." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Butler only challenges whether Plaintiff adequately alleged discriminatory intent. *See* Doc. No. 69 at 10; Doc. No. 74 at 3.

Butler argues that Plaintiff failed to state "any facts" that show discriminatory intent. Doc. No. 69 at 10. Plaintiff argues that its SAC alleges that "Defendant discriminated against Plaintiff by firing its African-American technicians on the basis of their race and replacing them with 'Caucasian' employees." Doc. No. 71 at 11.

Plaintiff alleges two instances of racial prejudice by Butler demonstrate discriminatory intent. *See* Doc. No. 55 at ¶¶ 7(e), 28. First, Plaintiff alleges Butler fired "numerous African-American technicians placed in Southeast Texas by Direct TEK . . . ." *Id.* at ¶ 7(e). Second, Plaintiff alleges that, after Frontier fired an African-American technician on a Frontier project in Wisconsin, Butler's Susan Nab sent an email to Carlos Medina  and Eurie Acosta that asked for a replacement technician that was "preferably 'Caucasian.'" *Id.*; Doc. No. 70-1 at 1-2. Plaintiff then alleges that it "refused to comply with Frontier/Butler/Nab's acts of racial prejudice and insistence on only

Caucasian technicians," and, subsequently, Direct TEK was removed from all Frontier's projects. *See* Doc. No. 55 at ¶ 7(e); Doc. No.. 70-2 at 1. These allegations, taken as true and in the light most favorable to Plaintiff, make plausible the inference that Butler intended to discriminate against Plaintiff based on race. *See Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017). Accordingly, at this stage of the proceedings, Direct TEK's allegations are sufficient to plead discriminatory intent. The Court recommends denying Butler's motion with respect to this claim. Because Butler only challenged whether Plaintiff adequately alleged discriminatory intent, the Court does not address the other elements.

*9. Civil Conspiracy*

As discussed previously, Plaintiff failed to state a claim of civil conspiracy that is plausible on its face. Thus, for the reasons mentioned above, the Court recommends dismissing Direct TEK's civil conspiracy claim against Butler.

## III.  Leave to Amend

Plaintiff requests leave to amend its SAC to further set forth the factual basis for its claims. Doc. No. 71 at 13; Doc. No. 73 at 10. Defendants argue that Plaintiff should not be granted "a fourth bite at the apple . . . ." Doc. No. 74 at 5; Doc. No. 75 at 11.

Federal Rule of Civil Procedure 15 provides that the court should grant leave to amend when "justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15 "evinces a bias in favor of granting leave to amend," and the "decision to grant leave is within the discretion of the trial court." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.* at 314-15.

Here, Plaintiff has already amended its complaint twice. *See* Doc. Nos. 1, 12, 55. Both times, Plaintiff amended its complaint after Butler, Frontier, or both had filed a motion to dismiss. *See* Doc. Nos. 9, 17, 18. Plaintiff's SAC added few substantive factual allegations compared to its Amended Complaint. *See* Doc. Nos. 12, 55. Plaintiff has twice failed to cure deficiencies in its complaint and added minimal factual allegations to the subsequent amended complaints. Additionally, if the Court granted leave to amend its complaint for a third time, Defendants would be required to analyze and respond to a fourth complaint. This would be unduly burdensome and prejudicial to Defendants. Therefore, Plaintiff's request to replead is denied.

## CONCLUSION

The Court **RECOMMENDS GRANTING-IN-PART AND DENYING-IN-PART** Defendant Frontier's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Doc. No 67). The Court recommends dismissing the following claims against Frontier: (1) Count 2: Tortious Interference with Existing Business Relationships; (2) Count 8: Business Disparagement; and (3) Count 10: Civil Conspiracy.

The Court also **RECOMMENDS GRANTING-IN-PARTAND DENYING-IN-PART** Defendant Butler's Motion to Dismiss Under Rule 12(b)(6) (Doc. No. 69). The Court recommends dismissing the following claims against Butler: (1) Count 2: Tortious Interference with Existing Business Relationships; (2) Count 5: Breach of Fiduciary Duty; (3) Count 6: Unjust Enrichment; (4) Count 7: Common Law Fraud; and (5) Count 10: Civil Conspiracy.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report shall bar that party from *de novo* review by the district

judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto Assn*, 79 F.3d 1415, 1430 (5th Cir 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 28th day of January, 2019.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE